UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Ricardo Facey, | C/A No. **4:08-00270-RBH-TER** |
| Plaintiff, | |
| v. | REPORT AND RECOMMENDATION |
| Larry W. Power, Director of Spartanburg County Jail; Sheriff Chuck Wright; Cpt. R.H. Brown, Highway Patrol; | |
| Defendants. | |

## I. PROCEDURAL BACKGROUND

The plaintiff, Ricardo Facey, filed this action under 42 U.S.C. § 1983[1] on January 29, 2008, alleging violations of his constitutional rights. Plaintiff is currently incarcerated at Evans Correctional Institution. At all times relevant to the allegations in the complaint, plaintiff was a pretrial detainee at the Spartanburg County Detention Facility ("SCDF"). Defendants filed a motion for summary judgment on October 3, 2008. (Document #34). Because plaintiff is proceeding pro se, he was advised on or about October 6, 2008, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), that a failure to respond to the defendants' motion for summary judgment with additional evidence or counter affidavits could result in dismissal of his complaint. The plaintiff filed a response on March 10, 2009, (doc.#58), and defendants filed a reply on March 20, 2009. (Doc. #60).

---

[1] All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d),DSC. Because this is a dispositive motion, the report and recommendation is entered for review by the District Judge.

## II. DISCUSSION

### A. ARGUMENT OF PARTIES/ FACTUAL ALLEGATIONS

The plaintiff alleges a constitutional violation due to the conditions of confinement at the SCDF, false arrest, and medical indifference. Plaintiff also appears to attempt to bring an action on behalf of his wife which fails. To state a civil rights claim, one must allege that he, himself, sustained deprivation of right privilege, or immunity secured by the Constitution or federal law. Inmates v. Owens, 561 F.2d 560, 562-562 (4th Cir. 1977). Therefore, it is recommended that any claims plaintiff attempts to bring on behalf of his wife be denied and dismissed.

Plaintiff alleges that Cpl R. H. Brown ("Brown") violated his Fourth Amendment rights when he arrested him on February 22, 2007. Plaintiff alleges that he and his wife were traveling on I-85 from Atlanta to New York when they were pulled over for a traffic stop. Plaintiff alleges that Brown called for back-up . Plaintiff admits that his wife consented to a search of the vehicle after receiving a citation/warning for speeding.

Further, plaintiff asserts he was subjected to cruel and unusual punishment as a pretrial detainee while housed at the SCDF. Plaintiff alleges that while in a wheel chair he was forced to shower with the general population for a few days while the shower in his cell was repaired, and that he was punished by being denied proper attention because of his handicap and by being housed in Pod 5 for asserting his constitutional rights. (Complaint p. 4). Plaintiff did not state in his complaint a factual allegation for medical indifference but attached copies of grievances wherein he asserts that he did not take his medication when given but had them in his cell saving them to take as need for bowel movements. Plaintiff alleges that one morning during a shakedown of the pod where he was housed, his medication for bowel movements was taken by the correctional officer as contraband because the "rules and regulations of this facility claims if you do not take the medication that is sent to you, you will be given a Rule infraction of refusing your medication." (Grievance form,

attachment to complaint). Plaintiff also alleges that he did not receive bond and that the defendants took items from him worth One hundred Thousand dollars in retail value for his jewelry business.

Plaintiff seeks compensation for pain and suffering, return of his property so he can resume his retail business, and compensation for the complaint for forfeiture #2008-cp-42-0105.

Defendants filed a motion for summary judgment along with a memorandum affidavits and exhibits in support.

### B. STANDARD FOR SUMMARY JUDGMENT

A federal court must liberally construe pleadings filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972), and Haines v. Kerner, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Department of Social Services, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." The opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e) and Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case,

on which that party will bear the burden of proof at trial. See Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact." In the Celotex case, the court held that defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the plaintiff failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof. Celotex, 477 U.S. at 322-323.

### C.  LEGAL ANALYSIS APPLICABLE TO PRETRIAL DETAINEES

Allegations of deprivations regarding pretrial detainees are considered under the due process clause of the Fourteenth Amendment instead of the cruel and unusual punishment clause of the Eighth Amendment. Cooper v. Dyke, 814 F.2d 941 (4th Cir. 1987). The rationale for this distinction was explained in Ingraham v. Wright, 430 U.S. 651 (1977) at 671-72:

> Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions . . . the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with the due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment (citations omitted).

A pretrial detainee may not be punished. An inmate serving a custodial sentence may be punished so long as the punishment is not "cruel and unusual." Bell v. Wolfish, 441 U.S. 520 (1979). Using the standard set out in that case, a condition must be evaluated on whether or not it was implemented to "punish" the detainee before he was convicted of any crime. Balanced against that concern, however, is the legitimate security concerns of housing a number of persons prior to their trials. If a restriction is imposed for a legitimate, non-punitive purpose, is not excessive to meet

4

its goal, and was not imposed simply to punish the inhabitants of a facility, it will be upheld. Bell, 441 U.S. at 538.

Since the plaintiff is proceeding pro se, this court is required to treat his filings and pleadings with some degree of liberality. Estelle v. Gamble, 429 U.S. 97 (1976); Hughes v. Rowe, 449 U.S. 9 (1980) (per curiam). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. Hughes v. Rowe, 449 U.S. 5, 66 L.Ed.2d 163, 101 S.Ct. 173 (1980)(per curiam). However, plaintiff is cautioned that the court may not rewrite his pleadings; Barnett v. Hargett, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct defendant's legal arguments for him, Small v. Endicott, 998 F.2d 411, 417-418 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. Beaudett v. City of Hampton, 775 F.2d 1274, 1278 (4th Cir. 1985), cert. denied, 475 U.S. 1088 (1986). Further, while the court should afford a *pro se* litigant every reasonable opportunity to construct and present his side, the court cannot act as counsel for the *pro se* litigant or excuse a failure to comply with the rules of this court.

### D. SHERIFF WRIGHT

Defendants submitted the affidavit of defendant Chuck Wright, Sheriff of Spartanburg County, who attests that the Spartanburg County Sheriff's office played absolutely no role in the arrest of the plaintiff. (Wright affidavit). The only entity involved in the plaintiff's arrest was the S.C. Department of Safety, more commonly known as the South Carolina Highway Patrol. Id. The officers involved in the traffic stop and arrest on February 22, 2007, were Highway Patrol Officers and employees of the S.C. Department of Public Safety. Id. The Spartanburg County Sheriff's Office is a completely separate entity and had no affiliation with the Highway Patrol or the S.C. Department

of Public Safety. Id. While the marijuana and $5,289.39 in cash found by the Troopers at the scene were turned over to the Spartanburg County Sheriff's Office for safekeeping of evidence and testing, neither Wright nor any employee of the Sheriff's department had any involvement in the arrest of plaintiff on February 22, 2007.

Based on the fact that defendant Wright had no personal involvement in plaintiff's arrest or confinement at the SCDF, it is recommended that this action be dismissed as to Sheriff Wright.

### E. CONDITIONS OF CONFINEMENT

As discussed, plaintiff alleges constitutional violations in that he had to shower with the general population when "I had a shower that didn't work until it was fix after complaining and falling in the shower that populations [h]as without any support beam to brace myself without causing any physical harm to myself." (Complaint). Plaintiff also alleges that he was not taking his daily medication but saving it to take as need for bowel movements. Plaintiff alleges that his medication for bowel movements was taken from him during a shake down because the rules at the SCDF will not allow you to keep medication in your cell for which he was given a Rule Infraction and moved to Pod 5.

Defendants contend that plaintiff's claims with regard to cruel and unusual punishment and deliberate indifference to his needs are unfounded. Defendants submitted the affidavit of Director Powers who attests that he is the director of the SCDF and is responsible for the jail's overall operation and management, as well as, supervising the jail's day-to-day operations. (Powers affidavit). The SCDF is a pre-trial detainment facility, and plaintiff arrived there on February 22, 2007, waiting trial on the charge of trafficking in marijuana. Id. Plaintiff had been stopped and

arrested earlier that day by State Trooper R.L. Brown, who had confiscated 295 pounds of marijuana from the vehicle plaintiff was riding in with his wife on I-85 in Spartanburg County. Id. Plaintiff pleaded guilty on May 2, 2008, to the lesser included offense of trafficking in marijuana more than 10 pounds but less than 100 and was sentenced to 10 years imprisonment and a $10,000.00 fine. Id. Plaintiff also pleaded guilty to possession with intent to distribute marijuana within ½ mile of a school and was sentenced to 10 years imprisonment. Id. The sentences were to run concurrently and Powers attached copies of the Arrest Warrant and Sentence Sheet as Exhibit A to his affidavit. Powers attests that he reviewed plaintiff's complaint and that the allegations are unfounded. Id. Powers attests that he did not discriminate against plaintiff and makes every possible accommodation for inmates with special needs such as plaintiff who is confined to a wheelchair. Because plaintiff was confined to a wheelchair, he was given a single occupancy cell assignment in order to accommodate his special needs, which includes a private shower with a built-in seat. Id. Powers attests that although plaintiff's violations of institutional rules resulted in plaintiff's confinement in Administrative Segregation for the majority of his stay at SCDF, he was still housed in a cell which included a private shower with a built-in seat while serving his time in Administrative Segregation. Id. Based on plaintiff's allegation concerning his difficult showering, Powers reviewed plaintiff's inmate file related to his complaint and attests that as the grievance forms/incident forms reveal that each time plaintiff made a complaint about the shower it was properly addressed in a timely manner and plaintiff was repeatedly told to ask for assistance with showering if he needed it but never did so. Id. Powers attests plaintiff became involved in a verbal altercation with Cpl. Sheila Dawkins on March 17, 2007, and was charged with refusing a direct order, interfering with an officer's duties, use of indecent language, and disrespect to an officer. Id. Plaintiff requested a hearing on these

7

charges and was found guilty of all charges on March 26, 2007, and was placed on administrative segregation for failing to follow SCDF rules. Id. Powers attests that at all time during his participation in plaintiff's case, he and the staff at SCDF were acting within their discretion and duties as employees of the SCDF, acted in good faith, and with proper motives. Id.

Confinement conditions of pretrial detainees are to be evaluated under the due process clause rather than the Eighth Amendment prohibition against cruel and unusual punishment. Bell, 441 U.S. at 535 n.16. To prevail on a conditions of confinement claim, a pretrial detainee must show either (1) an expressed intent to punish, or (2) lack of a reasonable relationship to a legitimate nonpunitive governmental objective, from which a punitive intent may be inferred. Hill v. Nicodemus, 979 F.2d 987, 991 (4th Cir. 1992) (citing Martin v. Gentile, 849 F.2d 863, 870 (4th Cir. 1988)). Prison officials act with the requisite culpable intent when they act with deliberate indifference to the inmates' suffering. Anderson v. County of Kern, 45 F.3d 1310, 1313 (9th Cir.) (citing Farmer v. Brennan, 511 U.S. 825 (1994)), as amended, 75 F.3d 448 (9th Cir.), cert. denied, 516 U.S. 916 (1995). The test for whether a prison official acts with deliberate indifference is a subjective one: the official must "know of and disregard an excessive risk to inmate health and safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. However, due process also requires the State to provide pretrial detainees with some minimal level of food, living space, and medical care, and "the failure to provide that level of necessities violates due process--even though the conditions imposed serve some ordinarily legitimate state objective." Hamm v. Dekalb Co., 774 F.2d 1567, 1573 (11th Cir. 1985), cert. denied, 475 U.S. 1096 (1986). The plaintiff must prove that he was deprived a "basic need" and that this deprivation was attended by deliberate

indifference on the part of the defendants. Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir., cert. denied, 510 U.S.949 (1993)). Further, the plaintiff must produce evidence of serious or significant physical or emotional injury resulting from challenged conditions to withstand summary judgment on prison conditions claim. Id. at 1380-1381.

Plaintiff has not presented evidence to create a genuine issue of material fact as to whether plaintiff was denied the minimal civilized measure of life's necessities, or that any named defendants engaged in any conduct "for the very purpose of causing harm or with the knowledge that harm would result. See Farmer v. Brennan, 511 U.S. 825, 837 (1994). Plaintiff has not shown that he was deprived a "basic need" and that these deprivations were attended by deliberate indifference on the part of the defendants. Strickler, supra Further, plaintiff has failed to show any express intent on the part of the defendants to punish him. Plaintiff was placed in Administrative Segregation for failing to follow the Rules and Regulations and the orders of the officers and admits he only had to shower with the population while his personal shower was being repaired. Plaintiff has not alleged that he was refused a shower or any other basic need.

Furthermore, decisions relating to the day-to-day operation of prisons are entrusted to the officials of the particular institution or correctional system. See Olim v. Wakinekona, supra. Federal courts must accord deference to state corrections departments with respect to the operation of the particular institution or prison system. Block v. Rutherford, supra; Rhodes v. Chapman, supra. Plaintiff, like any detainee, cannot expect the amenities, conveniences, and services of a good hotel. Harris v. Fleming, supra. As previously discussed, the Supreme Court noted that the administration of detention facilities is a complex task, with numerous administrative goals, including, among other things, the maintenance of order and discipline within the facility and the prevention of escapes.

9

These complex responsibilities are "not readily susceptible of resolution by decree" by the courts, because they require both expertise and the commitment of a variety of resources, which the states implement with extensive planning. The Supreme Court also noted that unless some practice offends constitutional principles, federal courts should decline to second-guess decisions made by prison officials.

The Supreme Court recognized that punishment prohibited by the Constitution does not result from negligence on the part of prison officials. The Supreme Court stated this principle and established the appropriate standard in Whitley v. Albers, 475 U.S. 312 (1986).

> [t]o be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interest or safety.
> . . . It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the
>
> Cruel and Unusual Punishments Clause. . . . Id., at 1084.

Based on these precedents the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison officials "wantonly and obdurately failed to take precautions for his safety in deliberate indifference to a specific known risk of harm. . . ." Ruefly v. Landon, 825 F.2d 792 (4th Cir. 1987). The Supreme Court has recently defined "deliberate indifference" in the context of the liability of physical injury to an inmate. In analyzing case law, the court concluded that deliberate indifference must be something more than mere negligence, but less purposeful or knowing conduct. The court held: "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825 (1994).In full context the Court held:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. (Emphasis added). This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation. The common law reflects such concern when it imposes tort liability on a purely objective basis. [Citations omitted]. But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

Farmer v. Brennan, 511 U.S. 825, 837-38, (1994).

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828 (1991).

The undersigned concludes that the plaintiff has failed to present evidence that the defendants wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm. Plaintiff was placed in a single occupancy cell with his own private shower. As plaintiff alleged himself, he only had to use the population showers while his was being fixed. Even when plaintiff was confined to Administrative Segregation for failing to follow the Rules and regulations of the SCDF, he still had his own shower with a built-in seat. (Powers Affidavit).

Based on a review fo the grievance/request forms and other documents presented, plaintiff's concerns about the shower were addressed as noted in the exhibits submitted by the defendants, and plaintiff was instructed to ask for assistance with showering if needed.

The plaintiff has failed to prove that the defendants were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they also drew the inference. Therefore, the undersigned concludes that there was no deliberate indifference to a known risk of harm by the defendants in this case. Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants.

Additionally, the inmate must show more than de minimis pain or injury. Id. at 9. Although a plaintiff need not show a significant injury, the court in Norman v. Taylor, 25 F.3d 1259, 1263 (4th Cir. 1994), cert. denied, 513 U.S. 1114 (1995), held that "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is de minimis." Plaintiff has not shown more than de minimis pain or injury. Specifically, the plaintiff does not present any evidence that he suffered any injury resulting from his allegations . Plaintiff only made allegations that he fell in the shower several times and had to be helped up. Therefore, it is recommended that summary judgment be granted with respect to the above issues complaining of conditions of confinement.

### F. MEDICAL INDIFFERENCE

If plaintiff is asserting a medical indifference claim against defendants in relation to his medication for bowel movements, his claim fails.

In the present case, the plaintiff's allegations are brought against the Sheriff of Spartanburg County, the Director of the SCDF, and a Highway Patrolman who are not medical personnel.[2] The Fourth Circuit has held that to bring a claim alleging the denial of medical treatment against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir.1990). Prison personnel may rely on the opinion of the medical staff as to the proper course of treatment. *Id.* Under these principles, the plaintiff has not alleged sufficient facts stating any claim actionable under § 1983 regarding his medical treatment against the defendants who are non-medical personnel. Plaintiff has failed to show that defendants were personally involved with any alleged denial or delay of treatment or that they deliberately interfered with plaintiff's medical treatment other than the staff placing plaintiff in Administrative Segregation and confiscating the medication

---

[2] In the case of Estelle v. Gamble, 429 U.S. 97 (1976), the Supreme Court reviewed the Eighth Amendment prohibition of punishments which "involve the unnecessary and wanton infliction of pain," Id., quoting Gregg v. Georgia, 428 U.S. 153, 169-73 (1976). . Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, the plaintiff may not prevail. Estelle, supra; Farmer v. Brennan, 511 U.S. 825 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986). In order to establish a prima facie case under the Eighth Amendment, plaintiff must show that, objectively assessed, he had a "sufficiently serious" medical need to require treatment. Brice v. Virginia Beach Correctional Center, 58 F.3d 101, 104 (4th Cir. 1995) (citing cases). "A medical need is 'serious' if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention' or if denial of or a delay in treatment causes the inmate 'to suffer a life-long handicap or permanent loss.' " Coppage v. Mann, 906 F. Supp. 1025, 1037 (E.D. Va. 1995) (quoting Monmouth Co. Correctional Institution Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 450 U.S. 1041 (1981)). Additionally, negligent or incorrect medical treatment is not actionable under 42 U.S.C. § 1983. Negligence, in general, is not actionable under 42 U.S.C. § 1983.

that he had been compiling which is against SCDF Rules. Grievance forms reveal that plaintiff was told that he could not keep medication in his cell. Attached to plaintiff's complaint was a grievance form in which plaintiff stated he was complaining that he was given suppositories but could not take the medication every day, thus keeping them which he knew was against the Rules based on his own statement. On June 28, 2007, the response to his grievance was that "Mr. Facey, while you are in this jail you will not keep, save, or hold for whenever, any medication unless it is ordered by the medical staff to allow you to keep medication on you or in your cell. If you don't need it that day, sign refused for that day. If you continue to have things your way, your rules you will find yourself back in Pod 5–follow instructions and stop writing me with excuses." (Document attached to complaint). Plaintiff was warned that if he did not need the medication that day for his bowel movements, then to sign that he refused the medication that day but not to continue to keep the medication in his cell which is against the Rules. Plaintiff has not shown that he was denied medical treatment only that he disagreed with the Rules regarding the disbursement of medication.[3] Thus, the undersigned recommends that this claim be dismissed and summary judgment granted in favor of the defendants as to medical indifference claim plaintiff alleges.[4]

---

[3] Plaintiff asserted in his response to the motion for summary judgment that, as a result of the defendants' actions regarding his medical care, he had to be taken and treated at the Spartanburg Hospital but did not state for what he was treated and did not provide any evidence.

[4] Plaintiff also appears to bring a claim for false arrest based on an unreasonable search. Plaintiff alleges that "during the traffic stop the officer smell an air fresher which wouldn't conclude a reasonable suspicious to believe the plaintiff was hiding any illegal drugs. Plaintiff Sara Luna did consent to an search of the vehicle when she believe after receiving a citation for speeding that she was free to leave." (Complaint). As plaintiff has now pleaded guilty, any claim as to false arrest would be barred by Heck v. Humphrey, 512 U.S. 477 (1994). Even if it was not barred by Heck, there is no merit to a false arrest claim in that both plaintiff and defendants assert that Sara Luna gave permission to search the vehicle in which 14 packages of marijuana were found. Therefore, the search was proper.

# G. QUALIFIED IMMUNITY

Defendants argue that they are entitled to qualified immunity pursuant to <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982).

When a person is sued in his individual capacity, the court may consider whether that person is entitled to immunity from suit. Immunity is a defense to be asserted by the defendant and the burden of proving entitlement to immunity rests with the defendant asserting it. Once asserted, however, the court should carefully consider whether the person is entitled to either absolute immunity (judicial and quasi-judicial, legislative) or qualified immunity. Once raised, immunity is a threshold issue, which should be addressed early in the action because if it can be shown to be a valid defense, the defendant is entitled to dismissal or summary judgment. For that reason, the issue of immunity should be addressed before discovery is allowed.

> The doctrine of qualified immunity attempts to reconcile two potentially conflicting principles: the need to deter government officials from violating an individual's federal civil rights and the need for government officials to act decisively without undue fear of judicial second guessing.

<u>Akers v. Caperton</u>, 998 F.2d 220, 225-26 (4th Cir. 1993).

The Supreme Court in <u>Harlow v. Fitzgerald</u>, 457 U.S. 800 (1982), established the standard which the court is to follow in determining whether defendant is protected by this immunity.

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

<u>Harlow</u>, 457 U.S. at 818.

In a discussion of qualified immunity, the Court of Appeals for the Fourth Circuit stated:

> Qualified immunity shields a governmental official from liability for civil monetary damages if the officer's "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." "In determining whether the specific right allegedly violated was 'clearly established,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." Moreover, "the manner in which this [clearly established] right applies to the actions of the official must also be apparent." As such, if there is a "legitimate question" as to whether an official's conduct constitutes a constitutional violation, the official is entitled to qualified immunity.

Wiley v. Doory, 14 F.3d 993 (4th Cir. 1994) (internal citations omitted), cert. denied, 516 U.S. 824 (1995). As discussed above, the plaintiff fails to show that the defendants violated any of his clearly established constitutional or statutory rights. Therefore, defendants are entitled to qualified immunity in their individual capacity. Thus, the undersigned recommends that the defendants' motion for summary judgment be granted on this issue.

## H. PENDENT JURISDICTION

Assuming plaintiff's § 1983 claim is dismissed by this Court and plaintiffs' complaint somehow can be conceived to state an additional claim for relief under any state common law theory, the undersigned concludes that such claim(s), if any, ought to be dismissed as well for want of jurisdiction. Specifically, this Court can decline to continue the action as to the pendent claims if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c).

## III. CONCLUSION

The plaintiff has failed to show that defendants violated any of his constitutional or statutory rights under 42 U.S.C. § 1983. It is therefore, for the reasons stated herein,

RECOMMENDED that the motion filed by defendants (document # 34) for summary judgment be GRANTED IN ITS ENTIRETY.

IT IS FURTHER RECOMMENDED that any other outstanding motions be deemed MOOT.

                              Respectfully Submitted,

                              s/Thomas E. Rogers, III
                              Thomas E. Rogers, III
                              United States Magistrate Judge

July 17, 2009
Florence, South Carolina

**The parties' attention is directed to the important notice on the next page.**